IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS BOVELL | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO: 05-2140 |
| | : | |
| JO ANNE B. BARNHART, Commissioner of Social Security | | |

**MEMORANDUM AND ORDER**

AND NOW, this 8th day of June 2006, upon consideration of the cross-motions for summary judgment (Doc. Nos. 10 and 11), and the reply brief thereto (Doc. No. 12), the Court makes the following findings and conclusions:

A.   On October 15, 2002, Thomas Bovell ("Bovell") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively of the Social Security Act, ("Act") 42 U.S.C. §§ 401-433, 1381-1383f. (Tr. 59-61)[1]. Throughout the administrative process including an April 30, 2004, hearing before an administrative law judge ("ALJ"), Bovell's claim was denied. (Tr. 6-8; 14-27; 30-34; 279-312). Pursuant to 42 U.S.C. § 405(g), Bovell then sought judicial review in this Court.

B.   The ALJ found all of Bovell's impairments to be severe. (Tr. 18 ¶ 6; 25 Finding No. 3 ),[2] but found that they were not severe enough to meet or medically equal any of the listed impairments ("Listing"s). (Tr. 18 ¶ 7; 26 Finding No. 4); 20 C.F.R. Appendix 1 to Subpart P of Part 404. The ALJ further concluded that Bovell could not perform his past relevant work, but was not disabled,[3] and had the residual functional capacity ("RFC") to perform unskilled light work, requiring no detailed instructions and no more than limited public contact. (Tr. 18 ¶ 3; 25 ¶¶ 27-30; 26-27 Finding Nos. 6, 7, 11, 12). With the testimony of a vocational expert ("VE"), the ALJ further concluded that Bovell was able to perform other jobs that exist in the national economy. (Tr. 25 ¶ 27; 26 Finding No. 8).

C.   The Court has plenary review of legal issues, but reviews the ALJ's factual findings to

---

[1] Along with Bovell's disability claim, the ALJ consolidated Bovell's SSI application which has not been included in the record.

[2] Paragraphs are numbered chronologically seriatim as they appear throughout the ALJ's decision.

[3] In determining that Bovell was not disabled, the ALJ used Medical-Vocational Rule 202.20 in Table 2, Appendix 2, Subpart P of Part 404 as a guide. (Tr. 26 Finding No. 11).

determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 854 F.2d 1211, 1213 (3d Cir. 1988). If the ALJ's conclusion is supported by substantial evidence, this Court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

D.   Bovell raises several arguments that the ALJ's determination was legally and factually erroneous. However, this Court finds that there is no legal error in the ALJ's decision and that there is substantial evidence in the record to support the conclusions of the ALJ.

    1.   Bovell first argues that the ALJ did not adequately explain his findings at step three of the sequential evaluation. In general, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but the ALJ must ensure that his decision contains a sufficient explanation to provide meaningful review. Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). Therefore, if the ALJ clearly evaluates the medical evidence of record and sets forth his evaluation in his decision, the ALJ satisfies Jones even where the ALJ did not identify or analyze the most relevant Listing. See also Rembert v. Comm'r of Soc. Sec. 142 Fed. Appx. 570, 572 (3d Cir. 2005) (holding that it is sufficient for the ALJ to hold that a claimant does not meet a Listing if he reviews, analyzes and relies on medical evidence to support his conclusion). Contrary to Bovell's assertion that the ALJ does not explain or discuss but merely summarizes the medical evidence, the ALJ's decision meets the above standard. The ALJ clearly, extensively, and fully evaluated the medical evidence and discussed with specificity the parameters of each limitation asserted by Bovell and determined based on various diagnoses, treatments, and symptoms for each impairment, that none met or equalled a Listing. (Tr. 19 ¶ 9- 22 ¶ 19).

    2.   Second, Bovell argues that the ALJ did not comply with 20 C.F.R. §§ 404.1520a and 416.920a complaining that the ALJ failed to rate the degree of limitation in four broad functional areas, often referred to as the "B" criteria since they appear as subsection B in most mental Listings. Here, the ALJ rated the degree of Bovell's limitations by adopting the ratings found in the Psychiatric Review Technique ("PRT") form. (Tr. 22 ¶ 17). Furthermore, the ALJ's decision, read in its entirety, covers Bovell's activities of daily living (Tr. 23 ¶ 22; 24-25 ¶ 26); social functioning (Tr. 23 ¶ 24); concentration, persistence or pace (Tr. 20 ¶ 14; 24 ¶ 25); and episodes of decompensation. (Tr. 24 ¶ 25).[4] Finally, the ALJ explicitly stated that, "In assessing the claimant's mental health impairment

---

[4] "Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." 20 C.F.R. Appendix 1 to Subpart P of Part 404,

under the 'B' criteria of the Psychiatric Review Technique, the claimant does not have 'marked' or 'extreme' functional limitations in any area." (Tr. 24 ¶ 25). This statement evidences the ALJ's compliance with the regulations, and demonstrates the legitimacy of the ALJ's decision, in that while Bovell's metal limitations are severe, they do not meet the Listings nor do they preclude him from performing substantial gainful activity. 20 C.F.R. §§ 404.1520a (e); 416.920a (e).

     3.     Next, Bovell argues that the ALJ failed to properly assess his RFC. More specifically, Bovell asserts that: (a) the ALJ failed to provide a function-by-function assessment as required by Social Security Ruling ("SSR") 96-8p; (b) the manner in which the ALJ defines RFC, in terms of skill level, is unacceptable; and (c) the RFC assessment fails to provide a narrative discussion of how the evidence supports his conclusions.

     a.     Pursuant to SSR 96-8p, the ALJ in assessing RFC must first determine an individual's functional limitations and assess his work related activities on a function-by function basis including certain physical demands of work activity such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions. 1996 SSR LEXIS 5, at * 2; 8-9; 20 C.F.R. §§ 404.1525(b); 416.945(b). Only after that assessment is done may an RFC determination be expressed in terms of the exertional levels of work such as sedentary, light, medium, heavy, and very heavy. SSR 96-8p, 1996 SSR LEXIS 5, at * 2.

     Here, the ALJ did not articulate how his analysis of each work related activity was affected by Bovell's impairments, but this is harmless error because the record reflects that Bovell was not disabled, and had the physical RFC to perform light work. Adams v. Barnhart, No. 02-2365, 2004 U.S. Dist. LEXIS 4302, at *4-5 (E.D. Pa. Jan. 29, 2004) (citations omitted) (stating that failure to individually analyze each work-related activity and the claimant's impairments is not reversible error, as long as the ALJ explains how he resolves inconsistencies in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination). Here, the state agency physical RFC assessment reflects: that Bovell could frequently lift twenty-five pounds; no limitation on standing, walking, or sitting; no push and/or pull limitations other than the limitations shown under lifting and carrying; and restrictions on reaching and vibration.[5] (Tr. 220-221). The ALJ appears to credit this assessment as it is consistent with other evidence of record[6] including a psychiatric evaluation by Dr. Behar noting that Bovell had "no physical limitations affecting mobility or any of the senses." (Tr. 176; 217-221). The ALJ similarly addresses Bovell's mental RFC determination. (See

---

Listing 12.00 (C)(4); (Tr. 24 ¶ 25, noting a lack of participation in counseling or hospitalizations; see Paragraph 4 infra regarding alterations in medication).

[5] In assessing the evidence of Bovell's physical limitations, the ALJ notes the limitations regarding right arm reaching and vibration. (Tr. 21- 22 ¶ 16; 24-25 ¶ 26). In particular, the vibration limitation is not required to be included in Bovell's RFC assessment or in the hypothetical as it is not supported by the record. Ramirez v. Barnhart, 372 F.3d 545 (3d Cir. 2004). Even assuming this omission was in error, the jobs suggested by the VE do not mention exposure to vibration and so any failure to omit a vibration limitation is harmless. (Tr. 221; see DOT 920.587-018; DOT 529.686-014).

[6] Other evidence of record supports the notion that Bovell was seeking pain medication in several visits in which he alleges physical pain. (Tr. 24 ¶ 25; 112-114; 119; 129; 130; 132; 133; 155-158; 169; 173; 184; 185; 215-16). Some physicians refused to give Bovell the medication he sought. (Tr. 112-113; 119; 129; 215).

Paragraph 3(b) & 4 infra). Because the ALJ sufficiently analyzed how he derived his mental and physical RFC determinations, he has met the requirements of the Adams decision and there is no error. 2004 U.S. Dist. LEXIS 4302, at *4-5.

   b. Bovell further asserts that the ability to perform unskilled work is not a proper RFC finding, arguing that there is no inherent correlation between skill level and mental demands. While there is some basis for this assertion, the ALJ's conclusion that Bovell "can perform unskilled, light work requiring no detailed instructions and with limited public contact" adequately incorporates Bovell's limitations. (Tr. 25 ¶ 27; 26 Finding No. 6); See SSR 85-15, 1985 WL 56857, at * 6. As noted by the ALJ, Bovell's moderate limitations documented on his mental RFC form include: "sustaining a normal workday, adapting to changes in the work setting, ability to carry out detailed instructions, and maintain attention and concentration for extended periods." (Tr. 22 ¶ 17; 236-239). Although it appears that the ALJ has credited this evaluation, it is not facially clear that the ALJ's mental RFC determination adequately captures Bovell's limitations. However, upon close scrutiny it is clear the ALJ must have concluded that the moderate limitations on Bovell's ability to sustain a normal work day, adapt to changes in the work setting and to maintain attention and concentration for extended periods were so minimal or negligible that they were not necessary components of Bovell's RFC. Aside from the limitations listed in the PRT and RFC forms, sustaining a work day and adapting to changes in the work setting are not documented elsewhere in the record. Finally, when limitations in concentration appear in the record they are: in the form of subjective complaints by Bovell; inconsistent throughout the record; or not mentioned in mental status exams where findings regarding concentration are expected. (Tr. 67; 70; 176-177; 232; 234; 235; 238; 252-254; 263; 299). Finally, unskilled work is consistent with the recommendation on the RFC form suggesting "simple, routine tasks." (Tr. 239). Therefore, the ALJ's RFC description and analysis are adequate and proper.

   c. Bovell's final RFC related argument is that the ALJ did not provide an adequate narrative discussion as required by SSR 96-8p, because he failed to describe how evidence supports each of his conclusions, including medical and non-medical facts. 1996 SSR LEXIS 5, at * 19. However, as addressed supra the ALJ's RFC assessment is adequate. The ALJ states in his decision, and it is evident from the record, that both his physical and mental RFC assessments are generally based upon the evidence of record and testimony at the hearing. (Tr. 24-25 ¶ 26).

  4. Next, Bovell argues that the ALJ's opinion is inconsistent with the opinion evidence which was rejected without adequate explanation. Generally, more weight is given to treating sources if their opinions are well-supported by medically acceptable sources and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Here, it is clear that the ALJ properly rejected Drs. Behar, Ifran, and McDuffy, and therefore, the consistency between the ALJ's decision and the opinions of those physicians is irrelevant. (Tr. 24 ¶ 25). Dr. Behar's opinion is explicitly and appropriately rejected. The ALJ explained that the GAF score given by Dr. Behar was inconsistent with the opinion itself,[7] deflated as a result of polysubstance abuse, and inconsistent with other mental status evidence of record. (Tr. Id.). Drs. Irfan and McDuffy's opinions are also given

---

[7] Dr. Behar's opinion reflects other internal inconsistencies, including that Bovell's "Concentration is good", followed by, "Concentration is inadequate in that he cannot repeat three numbers backward without 2 errors." (Tr. 176-177).

4

limited weight since their opinions are inconsistent with the underlying treatment notes and other evidence of record which overwhelmingly suggests that Bovell's mental status was largely tied to his "drug seeking" behavior.[8]  (Tr. 24 ¶ 25; 112-114; 119; 129; 130; 132; 133; 155-158; 169; 173: 177; 184; 185; 215-16).  Because these sources are inconsistent with the record as a whole, the ALJ properly, and with adequate explanation, discounted them.

     5.     Finally, Bovell argues that the ALJ rejected his testimony without adequate explanation. However, credibility determinations are for the ALJ to make.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  The ALJ addresses Bovell's subjective complaints and found them to be not fully credible.  Furthermore, the ALJ's explanation is more than sufficient.  The ALJ offered several reasons for finding Bovell not credible including that:  his complaints are disproportionate to the objective evidence; he has not sought treatment for his hepatitis and the record does not contain evidence of liver or end organ damage; his pain medication is not an accurate gauge of his pain since appears to have a problem with substance addiction; Bovell's own physicians recognized that Bovell was drug seeking; there is a lack of objective support for a disabling musculoskeletal impairment; and there is a lack of participation in counseling for his mental impairments.  (Tr. 24 ¶ 25).  Therefore, there is substantial evidence in the record to support the ALJ's adequately explained credibility determination.

Upon careful and independent consideration, the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law.  Therefore, it is hereby **ORDERED** that:

     5.     The motion for summary judgment filed by Thomas Bovell is **DENIED**;

     6.     The motion for summary judgment filed by the Commissioner is **GRANTED** and **JUDGMENT IS ENTERED IN FAVOR OF THE COMMISSIONER AND AGAINST THOMAS BOVELL**; and

     7.     The Clerk of Court is hereby directed to mark this case as **CLOSED**.

     S/ LOWELL A. REED, JR.
     LOWELL A. REED, JR., S.J.

---

[8] Although, the ALJ made a specific finding that drug and alcohol addiction are not material to this determination, the weight the ALJ affords to these physicians are still entitled to deference.  (Tr. 21 ¶ 25).